UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BELINDA KAY MORRISON, AS                                               Plaintiff
TRUSTEE OF THE SOVEREIGN LIVING
TRUST OF BELINDA KAY MORRISON

v.                                                                     Civil Action No. 3:25-cv-389-RGJ

ALLY FINANCIAL INC., A&G TOWING                                        Defendants
& RECOVERY, SECURED COLLATERAL
MANAGEMENT, INC.

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Pro se Plaintiff Belinda Kay Morrison, as Trustee of the Sovereign Living Trust of Belinda Kay Morrison ("Morrison") originally sued Defendants Ally Financial Inc. ("Ally"), A&G Towing & Recovery ("A&G Towing"), and Secured Collateral Management, Inc. ("Secured Collateral Management") (collectively "Defendants") in state court. [DE 1-2]. Summons was served by the Secretary of State on Ally at 500 Woodward Ave, Detroit, MI 48226. [DE 1-2 at 15-16]. Ally removed this case to federal court under diversity jurisdiction, 28 U.S.C. §§ 1332, 1441, and 1446, on June 25, 2025. [DE 1].[1] In its removal, Ally asserts that it is "Ally Bank" and was "erroneously sued as Ally Financial, Inc."[2]  [*Id.* at 1]. Ally also asserts it "is a is a bank chartered under Utah law headquartered in Utah." [*Id.* at 2, ¶9]. In its corporate disclosure statement, Ally states it is "an indirect wholly owned subsidiary of Ally Financial Inc. Ally Financial Inc. is a corporation organized under Delaware law with its principal place of business in Michigan." [DE 2].

---

[1] Ally alleges that Morrison is a citizen of the Commonwealth of Kentucky, that it is a citizen of Utah, and that the citizenships of A&G Towing and Secured Collateral Management should be disregarded because they are fraudulently joined. [DE 1 at 2-3].
[2] Ally does not explain why it was erroneously sued.  According to a letter from Ally Bank attached to Morrison's complaint [DE 1-2 at 64], the contract entered between Morrison and Glenn CDJR of Louisville was assigned to Ally Bank.

1

Ally moves for dismissal with prejudice of Morrison's claims under Fed. R. Civ. P. 12(b)(6). [DE 7]. Morrison filed a response, Ally filed a reply, and Morrison filed a surreply without leave of Court. [DE 9, DE 12, DE 13]. The motion is ripe. For the reasons below, Ally's Motion to Dismiss [DE 7] is **GRANTED**.

## I.   BACKGROUND[3]

Originally filed in Jefferson Circuit Court on May 23, 2025, Morrisons complaint alleges four causes of action. First, Morrison alleges a claim of "Conversion," in Count I because "Defendants unlawfully interfered with and retained possession of Plaintiff's property, constituting conversion under Kentucky law." [DE 1-2 at 18]. Second, Count II alleges "Commercial Dishonor (UCC 3-501, 3-603): Defendants refused valid lawful tender, dishonored the commercial instrument, and proceeded with enforcement actions." [*Id.*]. Third, Count III is for "Trespass to Chattels (Trust Property) for "[r]epossession without lawful authority or court order constitutes trespass against private trust property, in violation of KRS 355.9-609." [*Id.*] And finally, Count IV is for "Fraudulent Lien and Misrepresentation," specifically as to Ally Financial because it allegedly "placed and maintained a lien after payment was tendered, thereby obstructing title transfer and misrepresenting the status of the vehicle." [*Id.*] Morrison seeks return of the 2015 Toytoa Tacoma, "permanent removal of the unlawful lien on the vehicle," actual damages of $40,702 for "loss of use, emotional distress, harmful credit reporting, and harm to trust administration," punitive damages, a temporary restraining order enjoying "any sale, transfer, or further use of the vehicle," declaratory judgment confirming Morrison's "trust title ownership and discharging any presumed commercial obligations tied to the vehicle," and court costs, filings fees,

---

[3] The factual allegations in the Complaint [DE 1-2] are considered true for purposes of this motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

2

and other relief deemed just and proper. [*Id*.]. Morrison signed the complaint as "Belinda Kay Morrison, Trustee of the Sovereign Living Trust of Belinda Kay Morrison." [DE 1-2 at 19].

## II.   DISCUSSION

*1. Diversity Jurisdiction*

As an initial matter, the Court must examine the basis for diversity jurisdiction as Ally alleges that the other two defendants have been fraudulently joined and thus their citizenships disregarded for purposes of diversity. The Court has an inherent power and duty to ensure that the requirements for subject matter jurisdiction are satisfied in all cases. *See Klepsky v. United Parcel Serv.*, 489 F.3d 264, 268 (6th Cir. 2007) (stating that courts may raise subject matter jurisdiction at any juncture because "'a federal court lacks authority to hear a case without subject matter jurisdiction'") (quoting *Thornton v. Southwest Detroit Hosp.*, 859 F.2d 1131, 1133 (6th Cir. 1990)); *see also Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) (stating that failure of parties to object does not relieve court of obligation to determine whether jurisdiction exists).

Ally does not allege the citizenship of A&G Towing or Secured Collateral Management in its notice of removal.  Morrison's complaint lists an address for A&G Towing in Louisville, Kentucky [DE 1-2 at 14], and according to the Kentucky Secretary of State, "A&G Towing and Recovery, LLC" is a Kentucky Limited Liability Company. Unincorporated entities, such as limited liability companies, have the citizenship of each partner or member. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187–92 (1990)). According to the Kentucky Secretary of State business search, A & G Towing has at least one member that has a Jeffersontown, Kentucky address.  It would appear likely that A&G Towing has Kentucky citizenship based on the limited information available to

3

the Court. Morrison's complaint lists a Dallas, Texas address for Secure Collateral Management [DE 1-2 at 14]. The Court was unable to determine what type of entity Secured Collateral Management is and likely citizenship. However, the Court did not locate an entity with the Secured Collateral Management name on the Kentucky Secretary of State's online business entity search; thus, it would appear unlikely this defendant has Kentucky citizenship based on the limited information available to the Court through its own research.

    a. <u>Standard</u>

A federal district court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a). A defendant removing a case has the burden of proving the diversity jurisdiction requirements. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Removal raises significant federalism concerns, and, for this reason, "statutes conferring removal jurisdiction are to be construed strictly." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). Accordingly, all "doubts as to the propriety of removal are resolved in favor of remand." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007) (citation omitted).

The Sixth Circuit holds that the "fraudulent joinder" of non-diverse defendants will not defeat removal on diversity grounds. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). *See also Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994); *accord Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (noting that "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"). To succeed in demonstrating fraudulent joinder, the removing party must show that there is no "colorable cause of action" against the non-diverse defendant under applicable state

law, even when all disputed issues of fact are construed in the Plaintiff's favor. *Coyne*, 183 F.3d at 493. As with any dispute over removal, all doubts are resolved against removal. *See Brierly*, 184 F.3d at 534; *Alexander*, 13 F.3d at 949. The standard for establishing fraudulent joinder is higher than the standard for prevailing on a motion to dismiss under Rule 12(b)(6). *See Cordle v. Merck & Co.*, 405 F.Supp.2d 800, 803 (E.D.Ky. 2005).

When deciding issues of fraudulent joinder, the Court "appl[ies] a test similar to, but more lenient [to a plaintiff] than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias* 695 F.3d at 433. If the claim against the non-diverse defendant "has even a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)).

Even though the fraudulent joinder inquiry is conducted in federal court, "Kentucky pleading rules apply." *Combs v. ICG Hazard, LLC*, 934 F. Supp. 2d 915, 923 (E.D. Ky. 2013) (remanding). In Kentucky, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Ky. R. Civ. P. 8.01(1)(a). Kentucky "still follows the old notice-pleading regime." *Williams v. Altman, McGuire, McClellan & Crum,* Civ. No. 12–131–ART, 2013 WL 28378, at *3 (E.D. Ky. Jan. 2, 2013). Kentucky courts may dismiss a complaint only when a plaintiff "would not be entitled to relief under any set of facts which could be proved[.]" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citation omitted). Complaints can be conclusory as long as the plaintiff gives fair notice of the claims. *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960). Further, "the Rules of Civil Procedure with respect to stating a cause of action should be liberally construed" and "much leniency should be shown in construing

whether a complaint . . . states a cause of action." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) (internal quotation marks omitted and markings in original).[4]

"Claims of fraudulent joinder must be asserted with particularity and supported by clear and convincing evidence." *Parker v. Crete Carrier Corp.*, 914 F. Supp. 156, 159 (E.D. Ky. 1996). In reviewing allegations of fraudulent joinder, the Court may "pierce the pleading" and consider evidence normally reserved for summary judgment, such as affidavits presented by the parties. *Casias,* 695 F.3d at 433. That said, "[t]he court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Id*. (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 955–56 (6th Cir. 2011)). Further, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (citation omitted). As the burden of establishing fraudulent joinder rests with the removing party, the court must resolve any disputed questions of fact or ambiguities in controlling state law in favor of the non-removing party. *See Alexander*, 13 F.3d at 949.

    b. <u>Analysis</u>

Under this standard, the question is whether Morrison has at least a "colorable cause of action" against A&G Towing or Secured Collateral Management. Morrison alleges in her complaint that she is a "living woman and the Trustee of the Sovereign Living Trust of Belinda Kay Morrison." [DE 1-2]. Morrison purchased a Toyota Tacoma and entered a retail installment contract [DE 1-2 at 64] with Glenn CDJR of Louisville, which was assigned to Ally Bank. [*Id.*] Under the retail installment contract [DE 1-2] attached to Morrison's complaint, Morrison financed $29,441.50 and was to make sixty-six monthly payments in the amount of $627.61. [DE 1-2 at

---

[4] Like the Federal Rules, the Kentucky Civil Rules allow alternative or inconsistent pleadings under Ky. R. Civ. P. 8.05(2).

65]. The vehicle purchased served as a security interest. [DE 1-2 at 65]. In the event of default, the vehicle could be repossessed and sold if the purchaser did not pay (redeem) to get it back. [DE 1-2 at 67]. Morrison attaches documents to her complaint which she claims she transferred "the associated negotiable instrument" which included "without recourse" language that demonstrates she has no liability for the payments. [DE 1-2 at 71]. Morrison also attaches correspondence from Ally to her complaint which include her payment history on the account showing that she only made two payments on the accounts in the total amount of $1,255.22. [DE 1-2 at 70]. Morrison alleges the following timeline of events in her complaint:

> September 30, 2024 – Morrison acquired a 2015 Toyota Tacoma and "issued a lawful 'without recourse' payment to Ally Financial Inc. via the dealership where the truck was purchased."
>
> December 1, 2024 – Morrison submitted "a payoff letter with another 'without recourse' payment to Allys Financial."
>
> December 3, 2024 – Morrison submitted "a second payoff letter with additional settlement."
>
> March 18, 2025 – Morrison "submitted an Affidavit of Dishonor, Notice of Fault and Opportunity to Cure."
>
> April 17, 2025 – Morrison "submitted a Bill of Exchange and 1099 series forms to the U.S. Treasury as final settlement of obligation."
>
> May 15, 2025 – "A&G Towing and/or Secured Collateral Management repossessed the 2015 Toyota Tacoma without a court order, without notice, and without proof of default."

[DE 1-2 at 16-17]. Morrison then alleges that Ally refused to accept her "valid settlement and commercial tender" and "unlawfully retained a lien" on the Toyota Tacoma. [DE 1-2 at 17]. Morrison alleges the lien prevented her from "transfer[ing] and register[ing] the vehicle into the Trust and deregister from commercial jurisdiction, thus forcing [Morrison] to operate under duress." [*Id*.] Morrison alleges that title to the vehicle is her name but that "the vehicle was secured

and held in equity as Trust property, as evidenced by the UCC-1 Financing Statement, Security Agreement, and Certificate of Trust." [*Id.*] She alleges Defendants refuse to release the vehicle despite her "Cease and Desist notices, Affidavits of Ownership, and legal documentation." [*Id.*]

As noted above, Morrison brings four claims: (1) Conversion, (2) Commercial Dishonor, (3) Trespass to Chattels, and (4) Fraudulent Lien and Misrepresentation. [DE 1-2 at 18]. The fourth claim is only alleged against Ally. The only facts alleged specifically about A&G Towing and Secured Collateral Management is that they "repossessed the 2015 Toyota Tacoma without a court order, without notice, and without proof of default," and that all Defendants, refused to release the vehicle despite Morrison's "Cease and Desist notices, Affidavits of Ownership, and legal documentation."

Under Kentucky law, "[c]onversion is an intentional tort and is generally defined as 'the wrongful exercise of dominion and control over the property of another.'" *Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. App. 2016) citing *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014). The elements of conversion are:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Jones*, 454 S.W.3d at 853 (quoting *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n. 12 (Ky. 2005)).

Ally argues that Morrison does not clearly allege whether it was A & Towing or Secure Collateral Management that towed and repossessed the vehicle, but Ally cites no law requiring

8

more from Morrison's complaint on this point. [DE 1 at 3]. Ally further argues Morrison does not allege that either Defendant had "knowledge of the alleged 'valid settlement and commercial tender'" Morrison made to Ally or "any intent to deprive [Morrison] of property that is (allegedly) rightfully hers," or that "they engaged in any independent wrongdoing during the repossession." [DE 1 at 3]. The intent required for conversion, "is merely 'the intent to exercise control over the property'" and "'wrongful intent is not an essential element' of the tort of conversion." *Id.* (quoting 13 David J. Leibson, Kentucky Practice—Tort Law § 8.2 (2015 ed.)).

However, Morrison alleges she sent Ally various documents that made a "valid settlement and commercial tender" to Ally that relieved her of liability for her loan and attaches these documents to her complaint. [DE 1-2]. The attachments to Morrison's complaint demonstrate she was not making the required loan payments. Instead, as demonstrated by the allegations of her complaint and its attachments, Morrison sent nonsensical documents to Ally purporting to extinguish her debt to Ally under the retail installment contract. [DE 1-2 (attaching exhibits including "UCC-1, Trust Certificate, Security Agreement, Affidavits, Payment Instruments, and Affidavit of Ownership and Trust Claim")]. Under the retail installment contract [DE 1-2 at 67-68], and Kentucky law, Ally had the right to possess the Toyota Tacoma if Morrison was in default on her contractual obligations, *see* KRS 355.9-601, -609. Thus, even taking the allegations of the complaint as true and in a light most favorable to Morrison under Kentucky's pleading standards, there is not even "a glimmer of hope" that she could recover against any of the three defendants on her conversion claim because she did not have the right to possess, use, and enjoy the Toyota Tacoma when it was allegedly converted.

As to Morrison's claim of "Commercial Dishonor" against A & Towing or Secure Collateral Management, the Court could locate no case law establishing this claim as a valid cause

of action under Kentucky law. The "commercial dishonor" language used by Morrison and theory that Defendants refused her "valid tender" is a hallmark of sovereign citizen claims positing legal theories based on nonsensical documents. *See Bryant v. Washington Mut. Bank*, 524 F.Supp.2d 753 (W.D. Va. 2007), *aff'd*, 282 Fed. App'x 260 (4th Cir. 2008) (collecting cases and dismissing plaintiff's breach of contract claim after finding that plaintiff's "Bill of Exchange" allegedly payable by the Treasury was a "worthless piece of paper" that could not satisfy her mortgage payment). There is not even "a glimmer of hope" that Morrison could recover against any of the three defendants on her "Commercial Dishonor" claim.

That brings the analysis to Morrison's Trespass to Chattels claim against A & Towing or Secure Collateral Management. "Trespass requires a showing that a defendant intentionally (1) dispossessed another of the chattel or (2) used or intermeddled with a chattel in the possession of another." *Madison Cap. Co. v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 935 (W.D. Ky. 2011) (citing Restatement (Second) of Torts § 217 (1965)); *see also Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870, 872–73 (Ky. App. 2012). "The main distinction between conversion . . . and . . . trespass to chattel 'is the extent of the defendant's intermeddling with the property of the plaintiff, and the seriousness of the deprivation and damage caused.'" *Weatherly v. Hospice of Lake Cumberland, Inc.*, No. 2018-CA-000248-MR, 2019 WL 1422848, at *2 (Ky. App. Mar. 29, 2019). "Trespass to chattels involves relatively minor damages or deprivation . . ." *Id*. A defendant may be found liable for trespass to a plaintiff who is, or may by demand become, entitled to the immediate possession of the chattel if the chattel is impaired as to its condition, quality, or value. *Madison Cap.*, 765 F. Supp. 2d 923, 935 (W.D. Ky. 2011) (citing Restatement (Second) of Torts § 219).

As with conversion, there is not even "a glimmer of hope" that Morrison could recover against any of the defendants on this claim because she did not have the right to possess, use, or enjoy the Toyota Tacoma when it was allegedly trespassed. The allegations in Morrison's and its attachments, demonstrate she was not making payments under the retail installment contract. Instead, she sent nonsensical documents to Ally purporting to extinguish her debt under the retail installment contract. [DE 1-2]. Under the retail installment contract and Kentucky law, Ally had the right to possess the Toyota Tacoma if Morrison was in default on her contractual obligations, see KRS 355.9-601, -609 and Morrison was not entitled to immediate possession.

Having examined the claims in Morrison's complaint against A & Towing or Secure Collateral Management, there is clear and convincing evidence that these parties are fraudulently joined. Morrison and Ally are completely diverse, and the Court has subject matter jurisdiction.

*2. Motion to Dismiss [DE 7]*

Ally asserts dismissal is warranted under Rule 12(b)(6) for failure to state a claim. [DE 7].

a. Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences for the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett*, 561 F.3d at 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

11

action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

There are at least two categories of outside material that courts may consider at the pleadings stage: (1) "matters of public record" and (2) "documents" that are both "referred to in the complaint" and "central to the plaintiff's claim." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1001 (6th Cir. 2024). "Fairness and efficiency require this practice." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014); *see also Moyer v. Gov't Emps. Ins.*, 114 F.4th 563, 568 (6th Cir. 2024).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For example, "the less stringent standard for *pro se* plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out

12

in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). The Court cannot supply missing facts or un-pled allegations, create a claim for the pro se plaintiff, or otherwise act as an advocate for them. *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001); *Bond v. Verdecia*, 2023 WL 5807026, *2 (W.D. Ky. Sept. 7, 2023). A *pro se* complainant must still contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Ultimately, "[t]he Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet for Families & Child.*, No. 3:07-cv-11-S, 2007 WL 2462184, at *4 (W.D. Ky. Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

    b. <u>Analysis</u>

Morrison fails to allege any plausible claim. As stated in *Iqbal,* 129 S.Ct. at 1949, a plaintiff must provide more than mere labels and conclusions, or a "formulaic recitation of the elements of a cause of action." Here the complaint lacks plausible legal claims and any well-pled facts. Moreover, her allegations are speculative and conclusory such that they cannot survive a motion to dismiss. As discussed above in analyzing fraudulent joinder, Morrison's conversion and trespass to chattels claims fail because the Court cannot plausibly infer that the nonsensical documents cited by Morrison and attached to her complaint extinguished her obligation under the retail installment contract as she alleges. *Bryant*, 524 F. Supp. 2d at 760, *aff'd*, 282 F. App'x 260 (4th Cir. 2008) ("Plaintiff cites and the facts she alleges suggest that she did not tender payment, but rather a worthless piece of paper.") Thus, Plaintiff has failed to allege sufficient facts to allow the Court to infer that she had the right to possess the Toyota Tacoma. As discussed above, the

Court could locate no authority for proposition that Morrison's claim of "Commercial Dishonor" is a valid claim under Kentucky law, thus it fails as a matter of law.

Finally, Morrison alleges a claim of "Fraudulent Lien and Misrepresentation" against Ally because Ally "placed and maintained a lien after payment was tendered, thereby obstructing title transfer and misrepresenting the status of the vehicle." [DE 1-2 at 18]. The Court construes this claim as one for fraudulent misrepresentation. Under Kentucky law, a plaintiff asserting fraudulent misrepresentation must plead six elements: (1) the defendant made a material representation of past or present fact to the plaintiff; (2) the representation was false; (3) the defendant made the misrepresentation knowing it was false or recklessly; (4) the defendant induced the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). This claim must be pled with particularity under Rule 9(b). *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614-15 (6th Cir. 2024). This requires a plaintiff to: (1) specify the allegedly fraudulent statements, (2) identify their speaker, (3) state where and when the statements were made, (4) explain why the statements were fraudulent, (5) describe the fraudulent scheme, and (6) identify the resulting injury sufficient to "convince the court that the underlying fraud in all likelihood occurred." *Id*. "The point of Civil Rule 9(b) is to prevent, not facilitate, casual allegations of fraud." *Id*.

Morrison fails to plausibly allege a claim of fraudulent misrepresentation. At a minimum, the Court cannot reasonably infer from Morrison's allegations that Ally induced Morrison to act on any alleged misrepresentation or that Morrison reasonably relied upon the alleged misrepresentation. To the contrary, Morrison alleges that "Said lien obstructed Plaintiff's ability to transfer and register the vehicle into the Trust and deregister from commercial jurisdiction, thus

forcing Plaintiff to operate under duress." [DE 1-2 at 17]. For all these reasons, the action must be dismissed for Morrison's failure to state a claim upon which relief can be granted, under Rule 12(b)(6).

    c. <u>Sovereign citizen claims</u>.

The Court notes that Morrison's complaint appears to raise "sovereign citizen" beliefs or arguments or, at a minimum uses language associated with these theories. *See Young v. PNC Bank, N.A.,* 3:16-cv-298, 2018 WL 1251920, at *1-2 (N.D. Fla. Mar. 12, 2018); *Sanford v. Robins Fed. Credit Union*, 5:12-CV-306, 2012 WL 5875712, at *1 (M.D. Ga. Nov. 20, 2012); *Bryant*, 524 F. Supp. 2d at 757-61. As described by other courts in this Circuit, sovereign citizen pleadings are "dense, complex, and virtually unreadable," and a branch of sovereign citizen case law has grown to address the voluminous and often frivolous workload. *See* Francis X. Sullivan, *The "Usurping Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement*, 199 Wis. L. Rev. 85, 796 (1999) ("Faced with mountains of paperwork, courts must choose between spending hours deciphering Sovereign Citizen arguments or dismissing them out of hand"). Thus, "Courts have repeatedly rejected, as frivolous, arguments based on the theory of sovereign citizenship" recognizing that such arguments are "a waste of court resources." *Powell v. Michigan*, No. 22-10816, 2023 WL 2154954, at *2 (E.D. Mich. Jan. 24, 2023) (internal quotation marks omitted).

As a result, courts in this district and others frequently *sua sponte* dismiss sovereign citizen complaints for lack of subject matter jurisdiction or dismiss sovereign citizen complaints on this ground without extended argument. *Primero v. Barum*, No. 3:24-cv-200, 2024 WL 1543782, at *2 (W.D. Ky. Apr. 9, 2024) (dismissing sovereign citizen complaint, at screening stage, for lack of subject matter jurisdiction because "the legal theories espoused in this action are frivolous");

*Adkins v. Kentucky*, No. 3:18-mc-26, 2018 WL 6528462, at *1–2 (W.D. Ky. Dec. 12, 2018) (*sua sponte* dismissing sovereign citizen complaint for lack of subject-matter jurisdiction without further discussion); *Maddox El v. Scharf*, No. 23-10990, 2023 WL 3587538, at *1–2 (E.D. Mich. May 22, 2023) (dismissing sovereign citizen complaint at screening stage for lack of subject matter jurisdiction without further discussion). To the extent Morrison's claims assert these theories, the Court finds dismissal appropriate.

### III. CONCLUSION

For all the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1. Ally's motion to dismiss under 12(b)(6) [DE 7] is **GRANTED**; and

2. A separate judgment will be entered accordingly.

March 9, 2026

Rebecca Grady Jennings, District Judge
United States District Court

CC: Plaintiff, pro se